UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MICHAEL ROY JOHNSON,            )
                                )
     Plaintiff,            )
                                )
     v.                    )    Civil Action No. 13-1127 (RC)
                                )
DISTRICT OF COLUMBIA *et al.*,  )
                                )
     Defendants.           )

## MEMORANDUM OPINION

Plaintiff, a prisoner currently incarcerated at the United States Penitentiary in Atwater, California, sues the District of Columbia, former Metropolitan Police Department Detective John A. Burke, and the Chairman and certain named employees of the United States Parole Commission ("the Commission").[1] Presently before the Court is the federal defendants' motion to dismiss under Rules 12(b)(1), 12(b)(2), 12(b)(4), 12(b)(5), and 12(b)(6) of the Federal Rules of Civil Procedure.[2] *See* Mem. of P. & A. in Supp. of Fed. Defs.' Mot. to Dismiss [Dkt. # 23] at 1.

---

[1] The Court granted plaintiff leave to file both an amended complaint and a supplemental complaint. In the Amended Complaint filed October 7, 2013, plaintiff states that he is "adding additional parties and claims," and in the Supplemental Complaint filed November 12, 2013, he "ask[s] that this supplement be incorporated and read in conjunction with the Original and Amended Complaints." Suppl. Am. Compl. [Dkt. # 9] at 2. The Court must construe *pro se* filings liberally and, thus, considers collectively the original complaint ("Compl.) [Dkt. # 1], the amended complaint ("Am. Compl.") [Dkt. # 7], and the supplemental complaint ("Supp. Compl.") [Dkt. # 9].

[2] Plaintiff is proceeding *in forma pauperis* and, thus, relying on the court officers to "issue and serve all process, and perform all duties . . . ." 28 U.S.C. § 1915(d). When, in such proceedings, the propriety of service is challenged in a motion to dismiss, the court typically would give plaintiff the opportunity to provide additional information to cure any service deficiencies before dismissing the case under either Rule 12(b)(4) or Rule 12(b)(5). The dismissal of this case on defendants' other asserted grounds renders this step unnecessary.

1

Plaintiff has filed an opposition [Dkt. # 29], defendant has replied [Dkt. # 37], and plaintiff has filed a surreply.[3] For the following reasons, the Court will grant the federal defendants' motion and dismiss this case.[4]

## I. BACKGROUND

To put the claims against the federal defendants in proper context, the Court begins with the allegations against former MPD Detective Burke. In the enumerated paragraphs comprising his "Statement of Claim," Compl. at 5, plaintiff alleges that on December 26, 1989, Burke "presented [a] Complaint and his sworn Affidavit in Support of An Arrest Warrant to Superior Court Judge Shelli Bowers," who issued an arrest warrant "charging Plaintiff Johnson with rape while armed." Compl. ¶ 24. On December 27, 1989, plaintiff "presented himself for arrest," *id*. ¶ 25, and was charged with rape while armed of his "19 year old, live-in girlfriend of 6 months." *Id*. ¶¶ 1-2. The arrest stemmed from events that had occurred on either December 24, 1989, or December 25, 1989. *See id*. ¶¶ 4, 18.

Plaintiff alleges that after Burke spoke with the complaining witness, he contacted plaintiff and plaintiff agreed to appear for an interview with Burke at MPD's Sex Offense Branch on December 26, 1989. In addition to the interview, plaintiff alleges that he submitted a handwritten statement describing his version of the events. *See id*. ¶¶ 4-16. According to plaintiff, Burke failed to "perform[] an adequate investigation [before he] swore out [the foregoing] Affidavit in

---

[3] On August 25, 2014, plaintiff filed a motion for an enlargement of time to file a surreply [Dkt. # 40] and subsequently lodged the surreply with the Clerk of Court, who filed the document on September 8, 2014 [Dkt. # 41]. The Court has construed plaintiff's enlargement motion also as seeking leave to file the surreply and hereby grants the motion.

[4] The Court dismissed the complaint against the District of Columbia and John A. Burke by Order of August 25, 2014 [Dkt. # 38].

Support of An Arrest Warrant, asserting that there's probable cause and reasonable grounds for the issuance of an arrest warrant for the Plaintiff . . . ." *Id*. ¶ 17.

On March 17, 1990, plaintiff was released on bond "but [was] . . . arrested again and charged with the rape of a 22 year old prostitute." *Id*. ¶ 29. Plaintiff entered what he deemed to be "a coerced guilty plea in the latter case" and on November 27, 1990 "was sentenced to 15 years to life." *Id*. ¶ 30; *see Johnson v. U.S.*, 633 A.2d 828 (D.C. 1993) (affirming denial of collateral motion to withdraw guilty plea); *see also* Defs.' Ex. H [Dkt. # 23-1] (*Johnson v. Rios*, No. 1:10-cv-01164-SMS, slip op. (E.D.Cal. Mar. 29, 2011), *aff'd sub nom Johnson v. Clay*, No. 11-17321, 539 Fed.Appx. 748 (9th Cir. 2013) (unpublished) (denying habeas petition). According to plaintiff, the "December 1989 rape case was dismissed as part of the plea deal." Compl. ¶ 30.

Plaintiff's claims against the Commission and its employees stem from his prison sentence for the 1990 rape conviction. Plaintiff alleges that after the Commission assumed responsibility of D.C. Code offenders in 1998, defendant Dorothy A. Beale, a hearing examiner for the Commission,[5] conducted "a Pre-hearing Assessment of the plaintiff [on October 7, 1999] in preparation of his initial parole hearing," and "applied the 2000 guidelines which indicated that parole should be denied." Am. Compl. ¶ 16. According to plaintiff, Beale "requested a copy of the 1989 police report [that] [s]he believed . . . would 'determine the degree of risk' plaintiff posed." *Id*. ¶ 17. On February 6, 2000, defendant Jeffrey S. Kosbar, an executive reviewer for the Commission, "noted that the Commission had received the police report of the 1989 rape allegations," and "stated 'that the police report indicates that our subject did rape the victim while

---

[5] For purposes of this motion, the Court accepts as fact the defendants' job titles listed in paragraphs 2-11 of the Amended Complaint.

armed with a knife.'" *Id.* ¶ 19. On March 22, 2000, defendant Kenneth Walker, an examiner, "prepared a Hearing Summary after interviewing plaintiff at his initial hearing [and] calculated plaintiff's Total Point Score as a 3." *Id.* ¶ 21. Plaintiff alleges that based on the 2000 guidelines, his Total Point Score "meant parole [was] automatically denied at the initial hearing." *Id.*

Plaintiff alleges that at the initial hearing in March 2000, "he was asked about the 1989 rape allegations," Compl. ¶ 31, and "[d]espite the facts that [plaintiff] provided, the [C]ommission made a determination of guilt based solely on the fabricated police report prepared by Defendant Burke." *Id.* ¶ 33. Plaintiff "was denied parole and given a sixty month reconsideration date," which he alleges was a departure from the guidelines' presumptive reconsideration period of 12 to 18 months due to "the use of the 1989 rape allegations." *Id.* ¶ 34. Plaintiff alleges that "[t]hereafter," he lodged objections to the Commission's use of the 1989 rape allegations, *id.* ¶ 35, but that he "has been seen and denied parole on 3 other occasions (2005, 2008, and 2010), and the 1989 rape allegations are still being relied upon." *Id.* ¶ 41.

Plaintiff claims, among other violations, that the federal defendants "violated his Fifth Amendment due process rights from 2000 to 2008 when they deprived him [of] parole considerations pursuant to the D.C. Board of Parole Guidelines," Am. Compl. ¶ 56, and that they "violated the ex post facto clause of the [C]onstitution when they retroactively applied the Commission's 2000 guidelines at his parole hearings in 2000, 2005, and 2008." *Id.* ¶ 61.

Plaintiff seeks removal of the 1989 police report and references thereto from his parole file, *id.* ¶ 67, a new parole hearing "where the 1987 guidelines will be considered in its entirety," *id.* ¶ 68, and an unspecified amount of money damages, *id.* ¶¶ 73-74.

## II. ANALYSIS

**A. Legal Standards**

1. <u>Rule 12(b)(1) Motion to Dismiss for Lack of Subject Matter Jurisdiction</u>

Federal courts are courts of limited jurisdiction, and the law presumes that "a cause lies outside this limited jurisdiction . . . ." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction."). It is the plaintiff's burden to establish that the court has subject matter jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

Because subject matter jurisdiction focuses on the Court's power to hear a claim, the Court must give the plaintiff's factual allegations closer scrutiny than would be required in deciding a Rule 12(b)(6) motion for failure to state a claim. *See Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). Thus, the Court is not limited to the allegations contained in the complaint. *See Wilderness Soc'y v. Griles*, 824 F. 2d 4, 16 n.10 (D.C. Cir. 1987).

2. <u>Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim</u>

A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). The motion does not test a plaintiff's ultimate likelihood of success on the merits, but only forces the court to determine whether a plaintiff has properly stated a claim. *ACLU Found. of S. Cal. v. Barr*, 952 F.2d 457, 467 (D.C. Cir. 1991).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A

plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555–56 (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are therefore insufficient to withstand a motion to dismiss. *Iqbal*, 556 U.S. at 678. In deciding a motion to dismiss, the court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations. *See Warren v. District of Columbia*, 353 F.3d 36, 39–40 (D.C. Cir. 2004); *Browning*, 292 F.3d at 242.

**B. Collateral Estoppel**

Defendants have set forth a list of valid reasons why this case should be dismissed. *See* Mem. of P. & A. in Supp. of Fed. Defs.' Mot. to Dismiss at 1-2. In light of the earlier decision rendered by the Eastern District of California in plaintiff's habeas proceedings, the Court will first address the defense of issue preclusion, also known as collateral estoppel, which it finds applicable to plaintiff's ex post facto claim for injunctive relief. *See WMATA v. Local 2, Office and Professional Employees Intern. Union, AFL-CIO*, 965 F. Supp. 2d 13, 22 (D.D.C. 2013) ("Collateral estoppel is a threshold issue[.]") (citation omitted); *Morris v. United States Sentencing Comm'n*, --- F. Supp. 2d ---, 2014 WL 3749526, at *3 (D.D.C. Jul. 31, 2014) ("In deciding a motion to dismiss under Rule 12(b)(6), the Court may take judicial notice of facts litigated in a prior related case.") (citing *Oveissi v. Islamic Republic of Iran*, 879 F.Supp.2d 44, 49-50 (D.D.C. 2012)).

Issue preclusion "bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (quoting *New*

*Hampshire v. Maine*, 532 US. 742, 748-49 (2001). For collateral estoppel to apply, (1) the issue being raised must have been contested by the parties and submitted for adjudication in the prior case, (2) the issue must have been actually and necessarily determined by a court of competent jurisdiction, and (3) preclusion in the second case must not work a basic unfairness to the party bound by the first determination. *See Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992).

In plaintiff's habeas proceedings, the Eastern District of California considered, among other issues, whether "the United States Parole Commission violated the constitutional protections against ex post facto laws" and found that it had not. *Johnson v. Rios*, slip op. at 1, 5. The court recounted the same set of facts underlying this action, *see id*. at 1-4, and addressed the same arguments*, i.e*., whether the Commission violated the ex post facto clause by applying the 2000 parole guidelines during plaintiff's parole hearings instead of the D.C. Parole Board's 1987 guidelines that were in effect when plaintiff committed his crime. *Id*. at 5-6. The court concluded that since the Commission had applied the 1987 guidelines "[a]t [plaintiff's] most recent parole consideration hearing in 2010 and 28 C.F.R. § 2.80(o) provides that he will continue to be heard under these guidelines[,] . . . there was no retroactive application of parole guidelines to [plaintiff's] case, and no resulting ex post facto violation." *Id*. at 5. It reasoned that, given the applicable regulation, the claim was moot since "there is no reasonable expectation that the Commission will apply any other guidelines to [plaintiff's] case besides the D.C. Guidelines in effect when he committed his crime."[6] *Id*. at 6. The court relied upon section 2.80(o)(1) of the

---

[6] The habeas court also addressed the merits of the Commission's 2010 decision and concluded that the "Commission's decisions to deny parole were rationally based on the determination that there is a likelihood [plaintiff] will reoffend based [not on the 1989 rape allegations but instead] on his failure to complete any counseling to address the causative factors which led to the *commitment*

Code of Federal Regulations, which provides that a prisoner meeting the listed criteria may "receive a parole determination using the 1987 guidelines of the former District of Columbia Board of Parole." 28 C.F.R. § 2.80(o)(1). Hence, the Court finds that any claim for injunctive relief based on the ex post facto argument is foreclosed by the collateral estoppel doctrine.[7]

---

*offense.*" *Johnson v. Rios*, slip op. at 7 (emphasis supplied). The fact that the Commission applied the requested 1987 guidelines and still denied parole lends further support to the absence of an ex post facto violation. *See, e.g., Fletcher v. Reilly*, 433 F.3d 867, 877 (D.C. Cir. 2006) (noting that "a retroactively applied parole or reparole regulation or guideline violates the Ex Post Facto Clause if it 'creates a significant risk of prolonging [an inmate's] incarceration.'") (quoting *Garner v Jones*, 529 U.S. 244, 251 (2000)) (alterations in original). Moreover, plaintiff's claim that the Commission improperly relied on Burke's police report to deny parole is an issue that could have been raised in the prior proceeding but nonetheless is unavailing. The Court of Appeals has raised concerns where the Commission has "relie[d] solely on hearsay contained in a police investigative report" to revoke parole, but found the situation "significantly different" where the hearsay relied upon was contained in "a police investigative report" that, among other "indicia of reliability," was "quite detailed" and provided "a fairly full account of the circumstances surrounding the [underlying offense save] Crawford's version of events." *Crawford v. Jackson*, 323 F.3d 123, 130 (D.C. Cir. 2003); *see id.* (listing other relevant factors of reliability, including corroboration of portions of the report by the parolee's admission at the hearing that an encounter had indeed occurred, "internal corroboration of the complainant's version of events" via the officer's observation of the crime scene, and the parolee's ability to contest the police report at the hearing). Unlike Crawford, plaintiff was not facing a parole revocation and, as discussed next, had no actual liberty interest at stake. But to the extent that the Commission might have relied on the police report to deny parole, such reliance was neither arbitrary nor irrational. *See Ferguson v. Wainwright*, 849 F. Supp. 2d 1, 6 (D.D.C. 2012) ("[A] due process violation may be found 'even in the absence of an identifiable liberty interest' from a paroling authority's decision shown to be 'exceptionally arbitrary.'") (quoting *Blair–Bey v. Quick*, 151 F.3d 1036, 1048 n.11 (D.C. Cir. 1998)).

[7] Plaintiff is not foreclosed from bringing a new action if the Commission chooses not to follow 28 C.F.R. § 2.80 in a future parole proceeding. Given the controlling regulation, though, this Court agrees with the Eastern District of California that it is reasonable to expect that the Commission will continue to apply the 1987 guidelines to plaintiff's parole determinations. *Cf. Cueto v. Dir., Bureau of Immig. and Customs Enforcement,* 584 F. Supp. 2d 147, 150 (D.D.C. 2008) (discussing "multiple ways" in which a case may become moot while noting that a "defendant's voluntary cessation of the offending conduct does not render a case moot if the offending conduct is capable of being repeated without meaningful review and there is a reasonable expectation that the wrong will be repeated.) (citing *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 481 (1990)).

In addition, the Court finds that plaintiff's due process claim predicated on the same facts supporting the ex post facto claim is baseless. To trigger the due process clause under the circumstances presented, plaintiff must first identify a protected liberty interest, but it is established that D.C. prisoners do not have a constitutionally protected liberty interest in being released to parole. *See Ellis v. District of Columbia*, 84 F.3d 1413, 1415-20 (D.C. Cir. 1996). And although plaintiff has not alleged that he was deprived of the minimal due process requirements of notice and a meaningful and timely hearing, *see Mathews v. Eldridge*, 424 U.S. 319, 333 (1976), the record establishes that he was not. Hence, the claims for injunctive relief brought under both the ex post facto clause and the due process clause are dismissed under Rule 12(b)(6).

## C. Claims for Money Damages

Plaintiff claims that "[e]ach defendant is being sued individually and in his or her official capacities," Am. Compl. ¶ 12, and he seeks an unspecified amount of money damages, Compl. ¶ 74.

### 1. The Individual-Capacity Claims

"Personal-capacity [or individual-capacity] suits . . . seek to impose individual liability upon a government officer for actions taken under color of state law." *Hafer v. Melo*, 502 U.S. 21, 25 (1991). In *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388 (1971), the Supreme Court recognized a private cause of action against federal officials who "may be held personally liable . . . for unconstitutional conduct in which [they were] personally and directly involved." *Staples v. U.S*., 948 F. Supp. 2d 1, 3 (D.D.C. 2013) (citing *Cameron v. Thornburgh*, 983 F.2d 253, 258 (D.C. Cir. 1993)). To state a *Bivens* claim, "a plaintiff must plead

9

that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

In this case, the individual defendants alleged to have participated directly in the challenged parole decisions are Beale, Kosbar, and perhaps Walker. *See* Am. Compl.¶¶ 16-21. Defendants argue that Chairman Fulwood and the hearing officials enjoy absolute and qualified immunity. *See* Defs.' Mem. at 21-33. Whether Parole Commissioners enjoy absolute immunity based on their performance of quasi-judicial functions, as defendants contend, has been called into question by at least one judge in the Court of Appeals. *See Taylor v. Reilly*, 685 F.3d 1110, 1117-18 (D.C Cir. 2012) (Kavanaugh, J., concurring). Regardless, plaintiff's *Bivens* claims cannot withstand the qualified immunity defense.

The doctrine of qualified immunity protects government officials from suit for civil damages unless a plaintiff shows that the official violated a statutory or constitutional right, and that the right was clearly established at the time of the challenged conduct. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The Supreme Court has explained that there are two inquiries involved in a qualified immunity analysis. The first question is: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the [official's] conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If the answer is negative, "there is no necessity for further inquiries concerning qualified immunity." *Id*. If there is a constitutional violation, the second question is: Whether the right violated was "clearly established?" *Id*. The "dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable offic[ial] that his conduct was unlawful in the situation he confronted." *Id*. at 202. For a right to be found "clearly established," its "contours . . . must be sufficiently clear that a reasonable official would understand that what he is doing violates that

10

right.'" *Atherton v. District of Columbia Off. of Mayor*, 567 F.3d 672, 689 (D.C. Cir. 2009) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The Supreme Court has since instructed that the foregoing sequence is "often beneficial" but is not mandatory, and that judges may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis" to address first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The Court has determined that the due process clause was not violated, thereby ending the inquiry with regard to this ground for recovery. As for the ex post facto ground, the Court of Appeals established in *Taylor v. Reilly* that under like circumstances, Parole Commissioners and hearing examiners are entitled to qualified immunity. Similar to the plaintiff in this case, the plaintiff in *Taylor* (1) was convicted when "the District of Columbia had its own parole board that relied on regulations published in 1987," (2) was subjected to parole hearings in 2001 and 2005 where the Commission had applied its own 2000 regulations "regarding suitability for parole, . . . which it made applicable to D.C. Code offenders like Taylor," and (3) sued, *inter alia*, Parole Commissioners and the Parole Examiner who allegedly presided over his 2005 parole hearing. *Id*. at 1111-12. In affirming the district court's qualified immunity dismissal, the Court of Appeals held that "[a] parole official applying the 2000 Regulations at . . . parole hearings" conducted in 2001 and 2005 "would not have had reason to know that doing so would create a 'significant risk' of longer incarceration than applying the 1987 Regulations," and that "it would not have been clear to reasonable parole officials [in 2005] that applying the new regulations to Taylor would actually create such a risk. Nor had any case required officials . . . to conduct a searching comparison before deciding which regulations to apply." *Taylor*, 685 F.3d at 1117.

Since plaintiff's circumstances provide no basis for departing from the reasoning in *Taylor*, his *Bivens* claims are dismissed on the ground of qualified immunity. Hence, the Court will not

11

address the argument for dismissal of the individual defendants under Rule 12(b)(2) for lack of personal jurisdiction predicated on the defective service issues that are not now before the Court. *See, supra*, at 1, n.2; Defs.' Mem. at 13-16.

2. The Official-Capacity Claims

Sovereign immunity shields the federal government and its agencies from suit and is "jurisdictional in nature." *American Road & Transp. Builders Ass'n v. EPA*, 865 F. Supp. 2d 72, 79 (D.D.C. 2012) (quoting *FDIC v. Meyer*, 510 U.S. 471, 475 (1994)) (other citations omitted). The government may waive immunity, but such a waiver "must be unequivocally expressed in statutory text, and will not be implied." *Lane v. Pena*, 518 U.S. 187, 192 (1996) (citations omitted); *see also United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."). To survive a motion to dismiss under Rule 12(b)(1), "[t]he plaintiff bears the burden of establishing both the court's statutory jurisdiction and the government's waiver of its sovereign immunity." *American Road & Transp. Builders Ass'n*, 865 F. Supp. 2d at 80 (citing *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994); *Tri–State Hosp. Supply Corp. v. United States*, 341 F.3d 571, 575 (D.C. Cir. 2003); *Jackson v. Bush*, 448 F. Supp. 2d 198, 200 (D.D.C. 2006)).

Plaintiff's official-capacity claims are essentially a claim against the United States. *See Hafer*, 502 U.S. at 25 ("[T]he real party in interest in an official-capacity suit is the governmental entity and not the named official[.]"). Therefore, as noted above, plaintiff may recover money damages only if he can identify a statute that waives the government's immunity. The Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-80, waives the sovereign's immunity as to certain enumerated claims for money damages. In FTCA cases, the United States is substituted as the

proper defendant, and the United States has not consented to be sued for damages based on constitutional violations. *Meyer*, 510 U.S. at 476-78. Hence, the damages claim against the defendants in their official capacities is dismissed under Rule 12(b)(1) on sovereign immunity grounds.[8]

**D. Claim for Injunctive Relief**

Plaintiff wants any references to his 1989 arrest removed from his parole file. *See* Am. Compl. ¶ 67. He claims particularly that the 1989 police report "contains erroneous information and should not have been relied on." *Id*. Plaintiff's recourse for amending agency records lies exclusively under the Privacy Act, 5 U.S.C. § 552a, and exhaustion of administrative remedies is "a prerequisite to filing a Privacy Act complaint in district court." *Davis v. U.S.*, 84 Fed.Appx. 97 (D.C. Cir. 2003) (per curiam) (citing *Dickson v. OPM*, 828 F.2d 32, 40 (D.C. Cir. 1987)). Plaintiff has not shown that he has pursued, let alone exhausted, his administrative remedies under the Privacy Act. Hence, this claim for injunctive relief is dismissed under Rule 12(b)(6).

---

[8] Regardless, even if an FTCA claim were appropriate under the circumstances, plaintiff has failed to show that he has properly exhausted his administrative remedies by "first present[ing] the claim to the appropriate Federal agency. . . ." 28 U.S.C. § 2675. This exhaustion requirement is jurisdictional. *See Abdurrahman v. Engstrom*, 168 Fed.Appx. 445, 445 (D.C. Cir. 2005) (per curiam) (affirming the district court's dismissal of unexhausted FTCA claim "for lack of subject matter jurisdiction"); *Simpkins v. District of Columbia Gov't*, 108 F.3d 366, 371 (D.C. Cir. 2007) (holding that the FTCA's exhaustion requirement is "jurisdictional"). Moreover, a tort claim against the United States must be "presented in writing to the appropriate federal agency within two years after such claim accrues . . .," 28 U.S.C. § 2401(b), and plaintiff appears to have failed to file an administrative claim within two years of the last parole hearing at which the 2000 guidelines were applied.

## CONCLUSION

For the reasons discussed above, the federal defendants' motion to dismiss is granted, and this case is dismissed. A final order accompanies this Memorandum Opinion.

_____/s/_____
RUDOLPH CONTRERAS
United States District Judge

Date: September 10, 2014